IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Northern Division

| | | |
|---|---|---|
| JEFFREY DOW, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Case No.  CCB-01-2303 |
| v. | * | |
| | * | |
| JAMES BENNY JONES, <u>et al.</u>, | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT SEALS JONES WILSON GARROW & EVANS L.L.P MOTION AND MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

<u>INTRODUCTION</u>

NOW COMES Defendant Seals Jones Wilson Garrow & Evans L.L.P., by George L. Garrow, Jr., Esq., of Garrow & Evans, LLP, and requests that the Court grant Defendant's Motion for Summary Judgment, dismissing Plaintiff's Complaint against Defendant former law firm, for the reasons set forth below.

<u>STATEMENT OF FACTS</u>

As the Court is aware, this legal malpractice action arose from an attorney-client relationship formed between Plaintiff Jeffrey Dow and Defendants James Jones and Edwin Harvey.

Some facts are undisputed. The parties do not dispute that the former limited liability partnership of Seals Jones Wilson Garrow & Evans LLP ("the former LLP") was

1

formed in 1994 and dissolved in June 1997. The parties do not dispute that Jones and William Seals, Robert Wilson, George Garrow and Ferguson Evans, made up the five (5) member LLP, and that the former LLP has no assets that can be attached or levied to satisfy any judgment against it. There is no dispute that the individual partners were sued and quickly dismissed from the case by a Wicomico County, Maryland circuit court.[1] Finally, the parties do not dispute that Dow hired Defendants Jones and Harvey in late 1996 to defend him in a criminal case, and that both Jones and Harvey exclusively handled the investigation, research and trial of this case before the circuit court of Wicomico County.

ARGUMENT

Standard for Summary Judgment

Summary judgment may be granted when the moving party shows that there is no genuine issue of material fact, and it is legally entitled to judgment. See Kitchen v. Upshaw, 286 F.3d 179, 182 (4th Cir. 2002), citing Fed. R. Civ. P. 56(c). The moving party's initial burden depends on whether it would bear the burden of proof at trial. If it would not, its initial burden is met by "pointing out" that the non-moving party has not made a sufficient showing on an essential element of its case.  See Celotex Corp. v. Catrett, 477 U. S. 317, 323-25 (1986). If the moving party would bear the burden of proof at trial, it satisfies its initial burden by producing evidence upon which a reasonable jury could return a favorable verdict. Brinkley v. Harbour Recreation Club, 180 F. 3d 598, 614 n. 10 (4th Cir. 1999). After the initial showing, summary judgment will be granted

---

[1] Former LLP members Messrs. Garrow and Evans were sued and dismissed from the case by summary judgment in December 2000.  Plaintiff made an attempt to sue former partners Messrs. William Seals and Robert Wilson, but did not have their correct names and addresses.  The attempt therefore was unsuccessful.

2

unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor. Celotex, 477 U.S. at 323-25, citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002), citing Anderson, 477 U.S. at 255.

**PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW AGAINST THE FORMER LLP. THEREFORE, ANY CLAIM AGAINST THE FORMER LLP MUST BE DISMISSED**

The District of Columbia's repealed Registered Limited Liability Partnership Amendment Act of 1993 ("RLLPA"), was originally codified at D.C. Code § 41-143 through 148 as part of the D.C. Uniform Partnership Act ("UPA"), id. § 41-101 et. seq.[2] In 1995, the RLLPA as contained in the UPA was amended, and it is this amended RLLPA that the former LLP contends is controlling in this matter.[3] Until its repeal in 1998, the RLLPA was codified at D.C. Code § 41-101 as part of the UPA. While the former LLP initially was organized under this original act, this statute in its original form is no longer in force.

It is defendant's position that specific sections of the RLLPA control and take precedent over general partnership law. One section of the RLLPA speaks to liability issues generally and the issue of vicarious liability for torts specifically.

---

[2] The entire D.C. Registered Limited Liability Partnership Amendment Act of 1993 is attached as Exhibit A.

[3] Under former D.C. Code 41-143(d), any LLP seeking to retain its status had to renew its registration yearly. Therefore, all LLPs were governed by the statute in existence at the time of renewal, including any amendments. There is no dispute that the former LLP was formed in 1994 and filed dissolution papers on June 27, 1997. As these events occurred in 1997, the former LLP was governed by the amended RLLPA in existence at that time. Sections of the 1995 version of the UPA containing the RLLPA are collectively attached as Exhibit B.

3

**A. The Former Partnership May Not Be Held Vicariously Liable Under the Express Provisions of the RLLPA**

The RLLPA provided that:

> A partner in a registered limited liability partnership is not individually liable for debts and obligations of the partnership arising from errors, omissions, negligence, incompetence, or malfeasance committed in the course of the partnership business by a second partner or a representative of the partnership not working under the supervision or direction of the first partner at the time the errors, omissions, negligence, incompetence, or malfeasance occurred, unless the first partner . . . [ directly involved in the specific activity in which the errors, omissions, negligence, incompetence, or malfeasance were committed by the other partner or representative; or. . . [first partner received] written notice or knowledge of the errors, omissions, negligence, incompetence, or malfeasance that were committed by the other partner or representative at the time of occurrence.

RLLPA § 47(a), codified at D.C. Code § 41-146(a), repealed. By its plain language, the RLLPA limited the potential vicarious liability of each member of the formerLLP.

Section 47(a) is the only law to which the Court need refer to resolve the issue before it. As the author and practitioner Martin Lubaroff explained in a practitioner's treatise about limited liability partnerships, " [i]n an LLP, under certain circumstances and in connection with certain types of conduct and exposures, the liability of a partner is no longer joint and several with the partner's fellow partners. Indeed, such liability has been eliminated." Martin I. Lubaroff, Registered Limited Liability Partnerships: The Next Wave, in Forming and Using Limited Liability Companies and Limited Liability Partnerships 1994, at 509 (Martin I. Lubaroff & Brian L. Schorr, Co-Chairmen, 1994). Citing D.C. as one of the early few jurisdictions to have such a business form as codified in the RLLPA, he observed that "a partner in a registered limited liability partnership is not individually liable for the debts and obligations of a partnership 'arising from errors, omissions, negligence, incompetence, or malfeasance' committed while the partnership

4

was a registered limited liability partnership and in the course of the partnership's business." Id. at 510.

Importantly, the *firm's* liability is also limited in scope. As another commentator stated with regard to individual vicarious liability, "[a] partner is not liable for co-partner conduct for which the firm is not responsible." Alan R. Bromberg & Larry E. Ribstein, Bromberg and Ribstein on Limited Liability Partnerships and the Revised Uniform Partnership Act at 155 (2001 ed.). Thus, in order for the limited liability partnership to be liable for one partner's actions, "the misconduct must itself be a tort, and it must be significantly connected with the firm's business that it should be attributed to the firm." Id. at 155 (emphasis added).

Therefore, the Court must recognize that the RLLPA by its plain language put the partners in a limited liability partnership in a unique position. Under the Act, partners faced vicarious liability only in the very narrow situation in which the partner was directly involved or had direct written knowledge of another partner's actions. We can analogize from that plain language to determine the law applicable to the situation here. Under the Act, the legislature pointed to objective criteria to determine a partner's vicarious liability for another partner's acts. The plaintiff's subjective ideas about the partnership were irrelevant.

If a subjective analysis was not relevant to that issue, it must not be relevant to the issue of whether the firm faces vicarious liability for the partner's acts. If the Act itself instructs the Court to look at objective intent to determine individual liability, the same rule should apply here. Under the Act, it does not matter what the plaintiff or any other third person thought about the relationship of his or her attorney to the limited

5

liability partnership or to the other partners. Although under the applicable Act there is no provision that plainly tells us how to determine whether the limited liability partnership itself should be liable for the acts of a partner, it is no leap to reason that the same rule applies.

The applicable statute does tells us quite plainly that the inquiry into the plaintiff's thoughts regarding the relationship of one partner to another partner is irrelevant. Under 47(a), it is immaterial whether the plaintiff had the subjective opinion that two (2) members of the former LLP were in an agency relationship. The statute was clearly enacted with the legislative forethought—and legislative blessing—that partners would use this business form to create insulation from individual vicarious liability for each other's actions. Clearly, that was the very reason such a business form would be an appealing option.

Therefore, Plaintiff's principal argument that Jones bound the defendant former LLP pursuant to general agency principles and specific provisions of the UPA is not supported by the statute and thus is a non-starter. Obviously, under general partnership law, a court would examine the plaintiff's subjective thoughts, as it would be concerned with the plaintiff's impressions as to whether a partner represented himself or herself as an agent of the partnership. Under general partnership law, whether the plaintiff thought a partnership was representing him or her is a relevant inquiry. However, this inquiry is entirely irrelevant to the case at bar because general partnership law is inapplicable. Although it is true that an LLP is a specific form of general partnership, LLPs are not merely general partnerships that have elected LLP status; rather, they are a statutorily enacted creature primarily devised to offer limited liability to the partners of

the LLP entity. By explicit language in the RLLPA, limited liability partnerships formed under the RLLPA were governed by the RLLPA, not the UPA. See D.C. Code § 41-148, repealed. The court's inquiry into *objective* intent is a question of law that may be resolved by summary judgment. Dodek v. CF 16 Corp. 537 A. 2d 1086, 1093 (D.C. 1988).

So the argument that "…Plaintiff believed, that Plaintiff had retained the legal services of both Jones individually and of [the former law firm], by and through Jones…" (Plaintiff's Amended Complaint, paragraph 13, page 3) has no bearing here. The relevant inquiry here is only as to objective intent. Defendant submits that a reasonable person in Plaintiff's shoes would not have believed that a partnership represented him at least by the time Defendant Harvey --- a lawyer from another law firm—signed onto his case. If the "law firm" represented him, why would his lawyer obtain another attorney from another firm to assist with the case? The fact that there may be disputed issues of fact about the formation of the attorney-client relationship does not preclude summary judgment. No subjective understanding of those events is material here. As a matter of law, Jones could not bind the other partners by representations or malfeasance (if any) of which the other partners were not aware. Jones could not bind the former limited liability partnership by any third person's view of Jones' actions.

Sound judicial reasoning supports this argument as well. In Currier v. Amerigas Propane, L. P., 737 A. 2d 1118 (N. H. 1999), New Hampshire's highest court was asked to address an issue of liability similar to the issue before this Court. The plaintiff sought to hold the defendant limited partnership liable under the state's worker's compensation statute. By its exclusive remedy provision, the statute provided immunity to the

plaintiff's employer, which was a general partner in the limited partnership. The Uniform Limited Partnership Act ("ULPA") did not address the proper interpretation of that act to the extent it intersected with the worker's compensation exclusive remedy provision, so the plaintiff argued that the UPA should govern. <u>Id.</u> at 1120. New Hampshire precedent provided that in a general partnership, the exclusive remedy provision would apply to both the individual partner and the partnership. <u>Id.</u> Drawing the same parallel as Plaintiff here, the plaintiff argued that under the UPA the partnership was liable for the plaintiff's injuries.

But in <u>Currier,</u> well-settled rules of statutory construction required that the UPA govern limited partnerships only "where the ULPA is silent and the two statutes do not conflict," observed the court. <u>Id</u>. It would have been incongruous to resolve the issue raised in <u>Currier</u> by viewing the limited partnership as no different from a general partnership and looking to the UPA to decide the issue. <u>Id</u>. at 1121. "Uniformity" of application "compel[led] a holding that the defendant in this case is shielded from suit by the [ exclusive provision]" just as the employer was shielded from suit. <u>Id.</u> The court refused "to create an artificial distinction" between the defendant limited partnership and its general partner by which the partnership was subject to liability and the general partner, as a separate entity, was not. <u>Id.</u>

The supreme court's reasoning in <u>Currier</u> is applicable here. Plaintiff's anticipated argument that the dissolution provisions of the UPA govern the case at bar at the expense of the former RLLPA must be rejected. If the Court were to apply the UPA's dissolution provisions to a limited liability partnership over six (6) years after its dissolution, the Court would extend liability further than the RLLPA ever intended.

Treatment of the former LLP as an entity separate from its individual members would create an artificial distinction leading to an incongruous result. Indeed, basic principles of vicarious liability law applied uniformly here require that neither the former LLP partners or the defendant former LLP face liability for Jones' allegedly negligent acts.

**B. Because the Former LLP Would Not Be Liable Under the Law of Successor Liability, the Former LLP May Not Be Held Liable**

Bromberg & Ribstein also have observed that because the partners in a limited liability partnership are not liable for claims based on another partner's misconduct, the liability limitation arguably fixes at the time liability is asserted—that is, when the defendant is sued. Bromberg & Ribstein, <u>Bromberg and Ribstein on Limited Liability Partnerships</u> at 142. If at the time liability is asserted there is no partnership, there can be no liability of the firm or of individual defendants who are no longer partners in the firm. <u>Id</u>. From this observation an analogy can be made to the treatment of successor partnerships to LLPs. See also <u>id</u>. at 151.

Although the D.C. Court of Appeals has not faced the issue before this Court, there is case law to provide some guidance. In the <u>Dodek</u> case, the court was asked to determine whether new partners in the defendant partnership were liable for the debts of a former partnership. 537 A. 2d at 1098. Like Plaintiff here, the plaintiffs cited a section of the UPA, arguing that the three (3) members of the new partnership who were also in the old partnership were liable as successors or assigns. <u>Id</u>. Under the UPA as it existed in 1988, "[a] person admitted as a partner into an existing partnership" was held liable for partnership liabilities and obligations "arising before his [or her] admission as though he [or she] had been a partner when such obligations were incurred, *except that this liability shall be satisfied only out of partnership property.*" D.C. Code § 41-116

9

(1981) (emphasis added). In <u>Dodek,</u> the plaintiffs sought to hold a new firm liable as a successor to the firm with which they had dealings earlier.

But holding their "reliance on § 41-116 . . . incorrect," the court of appeals rejected the plaintiffs' "proposition that the new partners. . . are liable for the obligations of the old." 537 A. 2d at 1098. It reasoned that there could be no liability because there was no continuing or successor partnership. <u>Id</u>. at 1099. Under the UPA, a partnership could be dissolved by a particular undertaking set forth in the partnership agreement such as a complete transfer of assets. When the old partnership transferred its assets to another firm and the firm's limited partners withdrew, "it is clear that [the partnership] underwent dissolution." <u>Id.</u> The fact that three (3) original general partners continued as general partners in a new partnership with the old firm's assets was immaterial because "the original partnership had already been dissolved." <u>Id</u>. (emphasis added). Therefore, the only way the new firm or its members could face liability for obligations of the old firm was if there had been an explicit promise to pay the old partnership's debts. The new firm "assumed no such duty," however. <u>Id</u>. Because there was no evidence that the new firm or its partners assumed the obligations or liabilities of the former firm, the new firm was entitled to summary judgment and dismissal of the action against them. <u>Id.</u> at 1 098-1 100.

The <u>Dodek</u> case supports Defendant's argument here that the former LLP must be dismissed from this case because it ceased to exist in 1997. Cancellation of the limited liability partnership registration dissolved the partnership as a matter of law. Cf. <u>Continental Ins. Co. v. Rutledge</u> & Co. 750 A.2d 1219, 1234-35 (Del. Ch. 2000). No partnership or other firm agreed to assume any duty with regard to existing obligations

when defendant LLP dissolved. No partnership or firm was given the former LLP's assets. There is no evidence—or even an allegation—that a successor firm should be liable for the former firm's obligations here. In <u>Dodek</u>, D.C.'s highest court rejected the argument that the UPA supported successor liability, because there was no evidence that the old partnership continued in any form. Absent any support whatsoever for the argument that the new firm assumed the old firm's liabilities, the <u>Dodek</u> court held that dismissal was appropriate. Likewise, this Court should dismiss Defendant from the case at bar. Like the partnership in <u>Dodek</u>, the Defendant LLP was dissolved. If dissolution was foundation enough for the <u>Dodek</u> court to hold a new firm free from liability as a matter of law, the former LLP's dissolution in 1997 should be sufficient basis for its dismissal from this lawsuit.

**C. Why Would the Plaintiff Chase a Defendant with No Assets??? To Circumvent the Statute and Try to Make the Partners Liable!**

Finally, the $64,000 question: Why would the plaintiff spend so much time suing a law firm that has been defunct for six (6) years with no assets or liabilities to satisfy any verdict in this case??? The answer to this question clearly explains why this Court must dismiss this lawsuit. Plaintiff seeks a judgment against the former LLP so that he can one day try to convince this Court (or possibly some other tribunal) that perhaps the former partners did not abide by the statutory requirements of the RLLPA, and therefore plaintiff is entitled to "pierce the veil" of the former LLP and make the partners personally responsible for the "negligence" of the former law firm! While discovery has produced no evidence suggesting that the partners of the former LLP failed to so abide by these requirements, Plaintiff will do this "research" and make such an argument in post trial proceedings if he is so fortunate to obtain a verdict in this case

against the former LLP. Clearly, maintenance of this suit against the former LLP, as a practical matter, is in reality a suit against the individual lawyers who were once partners of the former firm. The RLLPA unambiguously forbade that result. Moreover, Maryland's circuit court already has determined as a matter of law that Evans and Garrow may not be required to face liability for Jones and Harvey's actions. Allowing Plaintiff to go forward in his action against a nonexistent business entity would essentially allow him to go after the individual assets of dismissed Defendants Evans and Garrow, and the other partners against whom an initial suit was unsuccessful (See Footnote 1).

This Court cannot permit the Plaintiff to toss aside the former RLLPA and continue this action that ostensibly is against the LLP but actually is designed to reach the assets of the former partners. The primary reason that the RLLPA and limited liability partnership statutes around the country were created was to offer partners liability protection. To allow the Plaintiff to proceed with this action offends all notion of fair play and violates the spirit of the former RLLPA.

### PLAINTIFF'S CLAIMS AGAINST THE FORMER LLP MUST BE DISMISSED FOR FAILURE OF HIS EXPERT TO OFFER A BASIS FOR HIS OPINION THAT THE FORMER LLP IS LIABLE

Rule 26(a)(2)(B) provides the following:

> (B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. *The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions* [emphasis added]; any

> exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

This subparagraph provides requirements that must be met by an expert in providing opinions and the bases for those opinions. This written report must be prepared by the expert and is important because it defines the parameters of the expert's testimony at trial. See, for example, Butera v. District of Columbia, 235 F.3d 637, 661 (D.C. Cir 2001).

Failure of an expert to provide either complete opinions or the bases for those opinions does not comport with the rules of this Court and is "insufficient." See Smith v. State Farm & Cas. Co., 164 F.R.D. 49, 53 (S.D.W.V. 1995) ,where a court found that experts' reports that were a page or two in length and referred to the bases for opinions in vague terms as "insufficient." Once past the court's disclosure deadline, the fatal flaw in the expert's report should not be correctable, as the expert should not get another "bite of the apple" to find manufacture some reason why a party failed to meet a standard or obligation imposed by law.

In this case, the Plaintiff disclosed the report of Professor Jose Anderson. See Exhibit C. While Professor Anderson provided many reasons why "trial counsel" Jones and Harvey's performance did not meet a reasonable standard as determined by Maryland's Court of Appeals, he provided absolutely no opinion as to why the former LLP is liable in this case. As this Court is aware, the former LLP's liability is contested because it is the firm's position (supported by an expert) that the firm did not exist at

the time of the alleged malpractice acts. Further, defendant Jones had no authority to bind a firm that had made the decision to dissolve in the fall of 2002, and who actually filed dissolution papers with the District in June 1997. Professor Anderson provided no commentary on any of these issues. Rather, his opinions and bases for all opinions focused specifically on the conduct of Jones and Harvey.

Based on Plaintiff expert's failure to provide an opinion regarding the former LLP's professional negligence, all claims against the former law firm should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court GRANT its Motion for Summary Judgment and dismiss former law firm Seals Jones Wilson Garrow & Evans, LLP from this action.

October 24, 2003

>Respectfully submitted,
>
>_____
>George L. Garrow, Jr., Esq.
>Ferguson Evans, Esq.
>Garrow & Evans, LLP
>1775 Pennsylvania Ave., NW
>Suite 400
>Washington, DC 20006
>Counsel for Defendant LLP
>202-467-5550

## CERTIFICATE OF SERVICE

      I hereby certify that service as required by the rules of this Court has been made by the parties on the following defendants on this 24nd day of October 2003:

Andrew Meehan, Esq.
Wright & Meehan
100 Church Alley
Chestertown, MD 21620

James Benny Jones, Esquire
666 Eleventh Street, NW, Suite 840
Washington, DC 20001

 

                                              _____
                                              George L. Garrow, Jr., Esq.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

Northern Division

| | |
|---|---|
| JEFFREY DOW, | * |
| | * |
| Plaintiff, | * |
| | *   Civil Case No.  CCB-01-2303 |
| v. | * |
| | * |
| JAMES BENNY JONES, <u>et al.</u>, | * |
| | * |
| Defendants. | * |
| | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## **ORDER**

UPON CONSIDERATION of the DEFENDANT SEALS JONES WILSON GARROW & EVANS L.L.P MOTION AND MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT; and it

APPEARING TO THE COURT that justice requires that said motion be granted, it is therefore

ORDERED that the DEFENDANT SEALS JONES WILSON GARROW & EVANS L.L.P MOTION AND MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT be, and is hereby, GRANTED, and that this case is DISMISSED as to DEFENDANT SEALS JONES WILSON GARROW & EVANS L.L.P.

SO ORDERED.

ENTERED this _____ day of _____, 2003.

_____
U. S. District Judge Catherine Blake

Copies to:

George L. Garrow, Jr., Esquire
Ferguson Evans, Esquire
Garrow & Evans, LLP
1775 Pennsylvania Ave., NW, Suite 400
Washington, DC 20006

James Benny Jones, Esquire
666 Eleventh Street, NW, Suite 840
Washington, DC 20001

Andrew C. Meehan, Esquire
Wright & Meehan
100 Church Alley
Chestertown, MD 21620