**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                          |   |                        |
|--------------------------|---|------------------------|
| JEFFREY DOW              | : |                        |
|                          | : |                        |
| v.                       | : | Civil No. CCB-01-2303  |
|                          | : |                        |
| JAMES BENNY JONES, et al.| : |                        |
|                          | : |                        |

## MEMORANDUM

Now pending before the court is a motion for summary judgment filed by the defendant, Seals

Jones Wilson Garrow & Evans, L.L.P., against the plaintiff, Jeffrey Dow.  The issues in this motion

have been fully briefed and no hearing is necessary.  <u>See</u> Local Rule 105.6.  For the reasons stated

below, the motion for summary judgment will be denied.

## BACKGROUND

This case involves claims of legal malpractice arising from the representation of the plaintiff,

Jeffrey Dow ("Dow"), in a criminal trial in Maryland state court.

On October 3, 1996, Dow was charged with various criminal offenses in the Circuit Court for

Wicomico County, Maryland, arising from an alleged sexual assault of a minor.  At the time, Dow was

a radio disc jockey and a candidate for mayor of Berlin, Maryland.  Although Dow had been appointed

counsel from the Office of the Public Defender for Wicomico County, he also sought private counsel to

represent him.  On November 15, 1996, Dow and his wife met at the Washington, D.C. office of the

law firm Seals Jones Wilson Garrow & Evans, L.L.P. ("SJWGE") with two partners, James Benny

Jones ("Jones") and Robert Wilson.  Dow states that Jones agreed at that meeting to represent Dow,

1

on behalf of himself and the firm SJWGE.  (Pl.'s Opp. Mem. at Ex. A, Dow Aff., at ¶ 5.)  On January

15, 1997, Dow paid a $1,000.00 retainer to Jones and executed a criminal retainer agreement,

agreeing to pay a flat fee of $12,500.00 for the representation.  The retainer agreement is printed on

SJWGE letterhead, and states that Dow agrees "to retain the legal services of Attorney James Benny

Jones to provide representation" in his pending criminal case.[1]  (Id. at Ex. D.)

At some time between January 15 and March 26, 1997, Dow also retained attorney Edwin H.

Harvey ("Harvey") to assist Jones as co-counsel in the case.  On March 11, Jones sent a letter to the

Assistant State's Attorney, copied to the Office of the Public Defender, stating that he represented

Dow in the pending criminal case and that he would be entering his appearance.  The letter is printed on

SJWGE letterhead, but refers only to "my representation" of Dow.  (Id. at Ex. E.)  On March 26,

Harvey sent a notice entering the appearances of James Benny Jones and Edwin H. Harvey as

attorneys of record for Dow in the pending criminal case.  This notice does not reference the firm of

SJWGE, but lists Jones's business address as 1010 Massachusetts Avenue, NW, Washington, D.C.,

which is the address for SJWGE.  (Def.'s Reply at Ex. 5.)

According to Dow, Jones advised him that he would leave the investigation of the case to the

Office of the Public Defender, explaining to Dow that this was standard criminal defense practice.

(Pl.'s Opp. Mem. at Ex. A, Dow Aff., at ¶ 8.)  Dow states that the defendants "conducted only a

---

[1]  SJWGE believes that Dow paid the retainer by a check made out to Jones, rather than to the firm SJWGE.  (Def.'s Reply at 2.)  SJWGE states that although the defendants have requested a copy of the canceled check, Dow has not provided it.  (Id.)  Without further documentary proof, and drawing all reasonable inferences in favor of the nonmoving plaintiff, this is not sufficient evidence to conclude that Dow made out the check to Jones personally.

cursory, one day investigation" and failed to interview key defense witnesses.  (Id. at ¶ 21.)  According

to Dow, Jones and Harvey also failed to move for a change of venue despite substantial pretrial

publicity, did not question potential jurors about this pretrial publicity, did not object to the presentation

of inadmissible testimony at his trial, and failed to call available defense witnesses, including alibi

witnesses.  (Id. at ¶ 28-30, 37-50.)

Dow was tried before a jury on July 30 and 31, 1997, and was found guilty of second degree

sex offense, third degree sex offense, and perverted sexual practice.  Dow was sentenced to 15 years

of imprisonment, all but seven years suspended, and 36 months of supervised probation.  The trial court

denied a motion for new trial, and Dow's direct appeal was dismissed by the Office of Public

Defender.  In March 1999, Dow filed a petition for post-conviction relief, alleging ineffective assistance

of counsel at his criminal trial.  On March 6, 2000, the Circuit Court for Wicomico County vacated

Dow's convictions and granted a new trial.  On November 26, 2001 the Circuit Court for Wicomico

County entered a *nolle prosequi* in the pending criminal case against Dow.

SJWGE was organized as a registered limited liability partnership ("LLP") in the District of

Columbia in May 1994.  Dow states that the five named partners of SJWGE held themselves out to the

public generally, and to Dow specifically, as partners operating a law firm under the name of Seals

Jones Wilson Garrow & Evans, L.L.P.  (Id. at ¶ 6.)  On June 27, 1997, approximately one month

before Dow's criminal trial, SJWGE received a certificate from the District of Columbia government

formally canceling the firm's status as a limited liability partnership.  The firm states that SJWGE actually

had dissolved as of May 1, 1997.  (Def.'s Reply at 2.)  Dow states that he was not notified and was

not aware of SJWGE's dissolution, or that Jones might not have the authority to act for SJWGE, or that

Jones might not be a partner of SJWGE.[2]  (Pl.'s Opp. Mem. at Ex. A, Dow Aff., at ¶ 10.)

Dow originally filed this suit in the Circuit Court for Wicomico County on July 28, 2000 against Jones, Harvey, SJWGE, and the four individual partners of SJWGE other than Jones.  On December 28, 2000 the Circuit Court entered summary judgment in favor of the individual partners other than Jones, but denied defendant SJWGE's motion for summary judgment.  The remaining defendants removed the case to this court on August 3, 2001.  On September 26, 2002 this court denied the defendants' motion to dismiss or, in the alternative, transfer the case, and denied the plaintiff's motion for entry of default judgment.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

---

[2]  Jones is listed as a partner in SJWGE's May 1994 application for a limited liability partnership and in its June 1997 cancellation of the limited liability partnership.  (Pl.'s Opp. Mem. at Exs. B, G.)  However, in its response to the plaintiff's request for admissions in this case, SJWGE denied a statement that Jones was a partner in SJWGE as of January 15, 1997 and as of March 11, 1997.  (Id. at Ex. F, at ¶ 7.)  There is no other evidence in the record regarding Jones's partnership status.  Drawing all reasonable inferences in favor of the nonmoving plaintiff for purposes of this summary judgment motion, the court cannot conclude that Jones was not a partner in SJWGE.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

## I.

Dow argues that this court should apply the law of the case doctrine, and uphold the Circuit Court's denial of SJWGE's prior summary judgment motion. Dow states that the present summary judgment motion does not contain "any new discernibly different arguments or facts," with the exception of an argument under Fed. R. Civ. P. 26 regarding Dow's proposed expert. (Pl.'s Opp. Mem. at 8.) SJWGE represents that at least some of the arguments made in its present motion were not made in state court, but provides no further details. (Def.'s Reply at 4.) The record does not contain a copy of any written order or memorandum from the state court, and neither party has made any further representations regarding the prior ruling.

"Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Columbus-America

Discovery Group v. Atl. Mut. Ins. Co., 203 F.3d 291, 304 (4th Cir. 2000) (quoting Arizona v.

California, 460 U.S. 605, 618 (1983)).  When a case is removed from state court to federal court, the

law of the case doctrine preserves any prior rulings by the state court in that case.  See, e.g., Pac.

Employers Ins. Co. v. Sav-a-lot of Winchester, 291 F.3d 392, 398 (6th Cir. 2002); Redfield v. Cont'l

Cas. Corp., 818 F.2d 596, 605 (7th Cir. 1987).  Law of the case has been described as an

"amorphous concept," which "directs a court's discretion, it does not limit the tribunal's power."

Arizona, 460 U.S. at 618.  The doctrine does not apply if the parties have presented new evidence or

new arguments, or if the prior ruling is legally erroneous.  See Smith v. Amedisys, Inc., 298 F.3d 434,

447-48 (5th Cir. 2002); Krueger Assocs., Inc. v. Am. Dist. Tel. Co. of Penn., 247 F.3d 61, 65-66

(3d Cir. 2001); Major v. CSX Transp., 278 F. Supp. 2d 597, 615-16 (D. Md. 2003).

The law of the case doctrine "is not a matter of rigid legal rule, but more a matter of proper

judicial administration which can vary with the circumstances."  Hill v. BASF Wyandotte Corp., 696

F.2d 287, 290 n.3 (4th Cir. 1982); see also Thornton v. Cessna Aircraft Co., 703 F. Supp. 1228,

1231 (D.S.C. 1988) (noting that a prior state court interlocutory ruling "while to be treated with

respect, is neither final nor conclusive," and is subject to reconsideration by a federal court following

removal).  Application of the doctrine would be particularly difficult in this case without supplementing

the present record, because it is not clear what evidence or arguments were presented to the state

court.  Under these circumstances, it is appropriate to consider the arguments and evidence presented

before this court.

## II.

Under Maryland law,[3] in order to maintain a cause of action for legal malpractice, "a plaintiff must allege: (1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) loss to the client proximately caused by that neglect of duty." Roginsky v. Blake, 131 F. Supp. 2d 715, 719-20 (D. Md. 2000) (citing Noble v. Bruce, 709 A.2d 1264, 1269 (Md. 1998)). The Court of Special Appeals has held that a plaintiff claiming "criminal malpractice," or legal malpractice arising from a criminal prosecution, must additionally prove: "(4) the criminal plaintiff's initiation of post conviction, appellate, or habeas relief premised on the lawyer's error; (5) and, ultimately, the criminal plaintiff's successful pursuit of post conviction, appellate, or habeas relief based on attorney error." Berringer v. Steele, 758 A.2d 574, 604 (Md. App. 2000).

SJWGE denies that the firm was a party to the retainer agreement executed with Dow in March 1997, and argues that the firm never formed an attorney-client relationship with Dow. SJWGE first argues that the court should apply an objective analysis to determine if an attorney-client relationship was formed, rather than a subjective analysis under general principles of agency and partnership law. SJWGE also suggests that the firm cannot be held liable because it had dissolved at the time of the alleged malpractice. Dow responds that general principles of agency and partnership law govern

---

[3] The forum state's conflict of law rules determine what substantive law to apply to state law claims in federal court. See Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam). Under Maryland conflict of law rules, a tort claim is governed by the law of the place where the injury occurred, which is the place where the last act required to complete the tort occurred. See Phillip Morris, Inc. v. Angeletti, 752 A.2d 200, 230-31 (Md. 2000). Legal malpractice liability arguably can arise under either tort or contract law, and the Maryland Court of Appeals has never held that either theory of liability is exclusive. See Stone v. Chicago Title Ins. Co. of Md., 624 A.2d 496, 499-500 (Md. 1993). In this case, Dow's complaint is framed as sounding in tort and the alleged tort occurred in Maryland, so the court will apply Maryland legal malpractice law.

registered LLPs under District of Columbia law, that Jones's alleged actions are binding on the firm

pursuant to these general legal principles, and that the firm's dissolution did not automatically terminate

its liability to Dow.

## A.

In general partnerships, all partners are jointly and severally liable for all debts and obligations

of the partnership, including any wrongful acts or omissions by another partner.  See, e.g., D.C. Code §

33-103.06 (2001).  By registering with the state, paying a fee, and carrying a specified amount of

liability insurance, registered LLPs are granted a special statutory shield which limits the liability of

individual partners for the misconduct of other partners.  See Carter G. Bishop & Daniel S.

Kleinberger, Limited Liability Companies: Tax & Business Law §§ 15.01(1), 15.02(3)(b),(e) (2004).

This does not relieve partners who are personally culpable of their individual liability to third parties, and

partnership assets also remain available to satisfy third-party claims.  See id. §§ 15.02(1),(3).

SJWGE was formed under the Registered Limited Liability Partnership Amendment Act of

1993 ("RLLPAA"), which was adopted by the District of Columbia to amend provisions of the

Uniform Partnership Act of 1962 ("UPA").[4]  The law provides for the registration and naming of LLPs,

and requires registered LLPs to carry liability insurance.  See D.C. Code Ann. §§ 41-143 to -145

(1981).  Importantly, the RLLPAA limits the liability of individual partners in registered LLPs:

---

[4]  The Uniform Partnership Act has been adopted by the District of Columbia and all states
except for Louisiana, and thus provides a uniform body of general partnership law in the United States.
The RLLPAA, originally codified at D.C. Code §§ 41-143 through -148, was repealed effective
January 1, 1998 with the adoption of the revised Uniform Partnership Act of 1996.  The parties do not
dispute that the repealed provisions govern this case, because Dow's injury accrued in 1997.  See
D.C. Code Ann. §§ 33-112.02, 33-112.04 (2001).

A partner in a registered limited liability partnership is not individually liable for debts and obligations of the partnership arising from errors, omissions, negligence, incompetence, or malfeasance committed in the course of the partnership business by a second partner or a representative of the partnership not working under the supervision or direction of the first partner at the time the errors, omissions, negligence, incompetence, or malfeasance occurred.

Id. § 41-146(a).  Exceptions are provided if a partner was directly involved in or had written notice or knowledge of the specific conduct at issue.  Id.  In addition, these provisions do not limit "the liability of partnership assets for partnership debts and obligations."  Id. § 41-146(c).  The RLLPAA also specifies that the liability of partners in an LLP properly registered in the District of Columbia for the debts and obligations of the LLP "shall at all time be determined solely and exclusively" by the provisions of the District of Columbia's UPA.  Id. § 41-148(c).[5]

## B.

The malpractice claims against SJWGE rely on Dow's subjective belief that an attorney-client relationship had been formed between the firm and himself, based on representations allegedly made by Jones and SJWGE itself.  SJWGE first argues that because the liability of partners in registered LLPs for the acts of other partners is governed by an objective standard under the RLLPAA, the court also should apply an objective analysis to determine LLP liability for the acts of partners.  SJWGE thus would have the court apply an objective analysis to the question of whether an attorney-client relationship was formed with the LLP.  SJWGE admits that a subjective analysis would govern under

---

[5]  Such choice-of-law provisions are common in registered LLP statutes, and are generally followed by courts in other jurisdictions.  See Bishop & Kleinberger, supra, § 15.02(1); see also, e.g., Md. Code Ann., Corps. & Ass'ns § 9A-106.  Both parties agree that the provisions of the RLLPAA should govern this case.  As discussed infra, the RLLPAA also incorporates the provisions of the UPA on general partnership law, which in turn incorporates principles of agency law.

general partnership law, but argues that general partnership law is inapplicable to registered LLPs, and notes that no provision in the RLLPAA specifically provides for partnership liability for the acts of partners. If SJWGE were correct, then Dow's subjective beliefs that he was represented by SJWGE would be irrelevant.

This argument fails, however, because general principles of agency and partnership law continue to govern registered LLPs. The RLLPAA provides that, "[u]nless otherwise specifically provided by other provisions of this chapter, the registered limited liability partnership shall be subject to all the provisions of this chapter," referring to the provisions governing general partnerships under the District of Columbia's UPA. D.C. Code Ann. § 41-143(g)(1981).[6] Courts in jurisdictions with similar provisions have recognized that general partnership law continues to govern LLPs, and have applied provisions of their UPA statutes to LLPs. See Canada Life Assurance Co. v. Estate of Lebowitz, 185 F.3d 231, 236 n.4 (4th Cir. 1999); Mudge Rose Guthrie Alexander & Ferdon v. Pickett, 11 F. Supp. 2d 449, 452 (S.D.N.Y. 1998); First Am. Title Ins. Co. v. Lawson, 827 A.2d 230, 236-37 (N.J. 2003); see also Shenandoah Assocs. Ltd. P'ship v. Tirana, 182 F. Supp. 2d 14, 19-20 (D.D.C. 2001) (noting that the UPA governs general partnerships and registered LLPs under D.C. law, whereas a separate chapter governs limited partnerships).

Pursuant to the provisions of the UPA, as in effect in the District of Columbia in 1997, every partner of an LLP has the power to bind the partnership as an agent:

---

[6] The RLLPAA was codified at former D.C. Code §§ 41-143 to 41-148 as an amendment to Chapter 41, the District of Columbia's UPA, which was codified at former D.C. Code §§ 41-101 to 41-148.

> Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

D.C. Code Ann. § 41-108(a) (1981); see also id. § 41-103(c) (noting that the "law of agency" applies under the UPA); cf. First Am. Title Ins. Co., 827 A.2d at 236-37 (indicating that a limited liability partnership law firm is governed by a similar statutory provision under the New Jersey UPA). Under these provisions and basic principles of agency law, a partner of an LLP who is acting within the actual or apparent authority of the partnership can bind the partnership to an agreement with a third party. See Restatement (Second) of Agency §§ 7-8, 27, 140, 159. Apparent authority is created when a principal represents that a party is his agent, and a third party actually and reasonably relies on this representation. See id. § 8 & cmt. a.-c.; id. § 27 & cmt. a. For example, if a law firm publicly represents that a person is a partner, and a third party actually and reasonably relies on this representation, then that person has apparent authority to perform all acts that a partner in a law firm ordinarily would. Cf. id. § 27 cmt. a. (noting that "apparent authority can be created by appointing a person to a position, such as manager or treasurer, which carries with it generally recognized duties").[7]

Following this general reasoning, courts in other jurisdictions have applied their UPA statutes and these general principles of agency law to determine a law firm's liability for the acts of its individual

---

[7] This does not require a showing that Dow was familiar with the extent of powers that a partner in a law firm ordinarily would possess. See Restatement (Second) of Agency § 27 cmt. d. ("Thus, a manager has apparent authority to do those things which managers in that business at that time and place customarily do, as to persons who know that he is a manager, although they do not know what powers managers in such businesses have.").

partners.  See, e.g., In re Summit Airlines, Inc., 160 B.R. 911, 917-20 (E.D. Pa. 1993) (embezzling

client funds); Blackmon v. Hale, 463 P.2d 418, 422-23 (Cal. 1970) (misappropriating client funds);

Podolan v. Idaho Legal Aid Services, Inc., 854 P.2d 280, 286-87 (Idaho Ct. App. 1993) (entering

into representation on behalf of firm); Homa v. Friendly Mobile Manor, Inc., 612 A.2d 322, 332-35

(Md. Ct. Spec. App. 1992) (engaging client on behalf of firm); Kansallis Fin. Ltd. v. Fern, 659 N.E.2d

731, 736-37 (Mass. 1996) (issuing fraudulent opinion letter); Staron v. Weinstein, 701 A.2d 1325,

1327-28 (N.J. Super. Ct. App. Div. 1997) (entering into retainer agreement on behalf of firm); Heath

v. Craighill, Rendelman, Ingle & Blythe, P.A., 388 S.E.2d 178, 181-83 (N.C. Ct. App. 1990)

(soliciting investments).

     Dow has raised genuine issues of material fact as to whether Jones had apparent authority to

enter into a retainer agreement on behalf of SJWGE, as a partner of the firm.[8]  SJWGE listed Jones as

a partner in its application for a limited liability partnership and included his last name and the

designation of "partnership" in the firm's operating name.  SJWGE does not dispute Dow's assertions

that he met with Jones and another partner of SJWGE at the firm's office in November 1996 "to

discuss the firm's representation of me," and that Jones agreed at that meeting to represent Dow "on

---

[8]  As stated, although SJWGE apparently denies that Jones was a partner of the firm as of
January 15, 1997, the date of the retainer agreement, there is sufficient evidence in the record to raise a
genuine factual issue on this point.  Drawing all reasonable inferences in favor of the nonmoving plaintiff,
the court cannot conclude that Jones was not a partner in SJWGE.  However, SJWGE also claims that
Jones did not have actual authority to enter into retainer agreements with clients, and because Dow has
not disputed this factual contention his claim must rest on Jones's apparent authority.  (See Pl.'s Opp.
Mem. at Ex. F, at ¶ 8-9.)

behalf of himself and SJWGE."[9]  (Pl.'s Opp. Mem. at Ex. A., Dow Aff., at ¶ 3, 5, 9.)  Dow states that

he never received any information suggesting that Jones did not have authority to enter into the retainer

agreement on behalf of the firm, and the agreement itself was printed on firm letterhead.  (Pl.'s Opp.

Mem. at Ex. A, Dow Aff., at ¶ 10.)  By holding Jones out publicly as a partner in SJWGE, and by

Robert Wilson's conduct in so representing Jones, the firm may have vested Jones with apparent

authority to perform those acts customarily performed by law firm partners.  Jones, by entering into the

retainer agreement with Dow, was "apparently carrying on in the usual way the business of the

partnership."  D.C. Code Ann. § 41-108(a). This evidence raises a genuine factual issue as to whether

Jones had apparent authority to act as a partner of SJWGE and thus to enter into representation

agreements on behalf of the firm, and whether Dow actually and reasonably relied on this apparent

authority.

          Although the facts are similar, this case can be distinguished from Homa, 612 A.2d at 332,

where the Maryland Court of Special Appeals agreed with the trial court's judgment that the defendant

attorney did not have apparent authority to enter into a representation agreement on behalf of his law

firm.[10]  In that case, the agreement between the parties was printed on firm letterhead, and the attorney

commented to the client that individuals at the firm and other personal contacts would be available to

---

          [9]  Importantly, any representations made by Robert Wilson, the other partner of SJWGE at the
November 1996 meeting, can be attributed to the partnership, and thus can serve as a manifestation by
the firm to a third party that Jones was its agent, thus creating apparent authority.  See D.C. Code Ann.
§§ 41-108, -110; Restatement (Second) of Agency § 8 & cmt. a.

          [10]  The procedural posture of Homa also distinguishes it.  The Court of Special Appeals was
reviewing a trial court's grant of judgment in favor of the plaintiff to determine if "there is any evidence
legally sufficient to support the findings of the court."  612 A.2d at 332.

give the attorney advice on the proposed work. <u>Id.</u> at 334. Material facts present in this case that

support Dow's claim were absent in <u>Homa</u>. The client in <u>Homa</u> was not aware of the attorney's

connection to the law firm prior to hiring him, the client never met with any partners in the firm, and no

other representations were made (by either the firm or the attorney) regarding the firm's role in the

transaction. <u>Id.</u> at 333-35. The facts in the present case are closer to those in <u>Staron</u>, 701 A.2d at

1326-29, where the court reversed a grant of summary judgment in favor of a law firm, distinguishing

<u>Homa</u>. In <u>Staron</u>, the agreement between the parties stated that the client was retaining the individual

attorney but also listed the firm, and the attorney subsequently sent out several letters on firm letterhead

stating "we represent" the client. <u>Id.</u> at 1326. The court concluded that, in the context of a motion for

summary judgment, the plaintiffs had made a sufficient showing that the attorney had apparent authority

to enter into retainer agreements on behalf of the firm and had done so in this case. <u>Id.</u> at 1327.

"Proper resolution of the issues in this case requires a detailed evaluation of the facts," <u>id.</u>, and at this

stage Dow has raised sufficient evidence to create genuine factual issues as to Jones's apparent

authority to bind SJWGE to a retainer agreement.

  Even if Jones was not a partner of SJWGE, the UPA provides that a person who represents

himself or is represented by others as a partner in an existing partnership "is an agent of the persons

consenting to such representation to bind them to the same extent and in the same manner as though he

were a partner in fact, with respect to persons who rely upon the representation." D.C. Code Ann. §

41-115(b). Courts have applied similar statutory provisions in other jurisdictions and general principles

of partnership by estoppel to hold entities apparently operating as law firms responsible for malpractice

committed by non-partners who were held out to the public as partners. <u>See</u> <u>Bonavire v. Wampler,</u>

14

779 F.2d 1011, 1016-17 (4th Cir. 1985) (applying Virginia statutory provisions regarding partnership); Atlas Tack Corp. v. DiMasi, 637 N.E.2d 230, 232-33 (Mass. App. Ct. 1994); Royal Bank & Trust Co. v. Weintraub, Gold & Alper, 497 N.E.2d 289, 291-92 (N.Y. 1986). Dow also has presented sufficient evidence to raise genuine factual issues as to whether SJWGE made public representations that Jones was a partner, such that Jones could create obligations that were binding on the partnership as if he were a partner. As noted, Jones was listed as a partner in SJWGE's LLP application and the firm's operating name included Jones's last name and the designation of "partnership." Dow met with Jones and another named partner at SJWGE's office, signed a retainer agreement on firm letterhead, and received at least one letter on firm letterhead. Dow states that he never received any information suggesting that Jones was not a partner of SJWGE, or that SJWGE was not a partnership. (Pl.'s Opp. Mem. at Ex. A, Dow Aff., at ¶ 10.) In cases involving similar public indicia of partnership and no contrary representations, courts have relied on the doctrine of partnership by estoppel to impose liability on entities that appeared to be operating as law firm partnerships. See Bonavire, 779 F.2d at 1016-17 (meetings at shared office space, public designation of "law firm," use of firm letterhead); Atlas Tack, 637 N.E.2d at 232 (shared office space, public designation of "professional association," use of firm letterhead); Royal Bank & Trust, 497 N.E.2d at 290-91 (shared office space, public designation of law firm, use of firm letterhead).

## C.

SJWGE next argues that the firm cannot be held liable for Jones's alleged malpractice, because the firm had dissolved as of May 1, 1997, several months prior to Dow's criminal trial. Without citing any authority, SJWGE argues that the UPA provisions regarding the dissolution of general partnerships

should not apply to registered LLPs.[11]  SJWGE's argument fails for many of the reasons stated above.

SJWGE's premise that the UPA provisions governing dissolution of general partnerships do not apply

to registered LLPs is incorrect.  See D.C. Code Ann. § 41-143(g)(1981) (noting that provisions of the

UPA are applicable to registered LLPs); see also Mudge Rose, 11 F. Supp. 2d at 452-53 (applying

UPA provisions in New York to winding up and dissolution of LLP law firm).

Under the governing UPA provisions, an LLP does not terminate immediately upon dissolution,

but instead "continues until the winding up of partnership affairs is completed."  D.C. Code Ann. § 41-

129 (1981).  After dissolution a partner still can bind the partnership "by any act appropriate for

winding up partnership affairs or completing transactions unfinished at dissolution."  Id. § 41-134(a)(1);

see also Pottash Bros. v. Burnet, 50 F.2d 317, 319 (D.C. Cir. 1931).[12]  A partner also can bind the

partnership after dissolution:

> [B]y any transaction which would bind the partnership if dissolution had not taken
> place, provided the other party to the transaction. . .had nevertheless known of the
> partnership prior to dissolution, and, having no knowledge or notice of dissolution, the
> fact of dissolution had not been advertised in a newspaper of general circulation in the
> place. . .at which the partnership business was regularly carried on.

D.C. Code Ann. § 41-134(a)(2)(B) (1981); see also Pottash Bros., 50 F.2d at 319 (enforcing a

---

[11]  SJWGE also analogizes to Dodek v. CF 16 Corp., 537 A.2d 1086 (D.C. 1988), a case in
which the court held that a new limited partnership could not be held liable for the debts and obligations
of a prior limited partnership which had dissolved.  These principles of successor liability are
inapplicable to this case.

[12]  Even if the partner has no actual authority to wind up partnership affairs, the partnership will
be bound if the third party to the transaction had no knowledge or notice that the partner lacked such
authority, and the lack of authority was not advertised in a newspaper of general circulation in the place
at which the partnership business was regularly carried on.  See D.C. Code Ann. § 41-134(c)(3)(B)
(1981).

waiver executed without proper authority by a former partner after dissolution, because the partnership

had not provided notice of its dissolution).

In some cases, it may be appropriate to impose liability for legal malpractice claims arising after

dissolution because the conduct at issue is appropriate for winding up the law partnership.  See, e.g.,

Majer v. Schmidt, 564 N.Y.S.2d 722, 724 (App. Div. 1991) (misappropriating client funds to pay a

pre-dissolution liability of the law firm partnership).  A number of courts have held that cases that are

pending at the time of a law firm's dissolution are matters that must be wound up.  See Robinson v.

Nussbaum, 11 F. Supp. 2d 1, 5-6 (D.D.C. 1997) (holding that fees from hourly billing after dissolution

for cases pending at dissolution are partnership property); Grossman v. Davis, 34 Cal. Rptr. 2d 355,

356-57 (Ct. App. 1994) (same for proceeds of contingency fee agreement); Beckman v. Farmer, 579

A.2d 618, 636 (D.C. 1990) (same); Gast v. Peters, 671 N.W.2d 758, 762-63 (Neb. 2003) (same).

Applying this reasoning and the UPA provisions regarding partnership liability during the winding-up

period, a former partner's malpractice which occurs after dissolution but in a case that was pending

prior to dissolution still can bind a dissolved law firm partnership, because the former partner's conduct

is appropriate for winding up partnership affairs.  See Redman v. Walters, 152 Cal. Rptr. 42, 44-45

(Ct. App. 1979); cf. Thompson v. Gilmore, 888 S.W.2d 715, 716-17 (Mo. Ct. App. 1994) (noting

that the UPA provisions are not inconsistent with the long-standing rule that dissolution does not relieve

partners from liability for pending partnership contracts).  In other cases, courts may apply the UPA

rule cited above on notice of dissolution to impose liability for post-dissolution malpractice by a former

partner, if the client previously had dealt with the partnership and had no knowledge of the

partnership's dissolution.  See Palomba v. Barish, 626 F. Supp. 722, 724-25 (E.D. Pa. 1985);

Blackmon 463 P.2d at 424 n.3; Vollgraff v. Block, 458 N.Y.S.2d 437, 439-40 (Spec. Term 1982);

cf. Staron, 701 A.2d at 1328 (noting that a law firm's failure to give notice of dissolution may result in

continuing responsibility for client matters).

SJWGE correctly states that the partnership's liability for Jones's malpractice depends on the

state of partnership affairs at the time of the alleged malpractice, in July 1997. Cf. In re Keck, Mahin

& Cate, 274 B.R. 740, 745-46 (N.D. Ill. 2002) (noting that vicarious liability for a partner's legal

malpractice arises at the time of the malpractice). Even if the partnership had dissolved as of July 1997,

SJWGE nonetheless may be liable for Jones's malpractice under two different theories. First, Dow can

argue that his representation was a pending client matter that had to be wound up following the

dissolution of the partnership. Jones's conduct in representing Dow in July 1997 thus would be

appropriate for winding up partnership affairs, and binding on the partnership under former D.C. Code

§ 41-134(a)(1). Second, Dow can argue that Jones's power to bind the partnership under ordinary

agency and partnership law, as described supra, continued after the firm's dissolution with respect to

Dow, because Dow did not receive proper notice of SJWGE's dissolution. Dow alleges that he never

received notice or otherwise became aware of SJWGE's dissolution, and there is no evidence in the

record that SJWGE provided any public notice of its dissolution. (Pl.'s Opp. Mem. at Ex. A, Dow

Aff., at ¶ 10.) Jones's conduct in representing Dow, which would have bound the partnership if

dissolution had not taken place, thus continued to bind the partnership under former D.C. Code § 41-

134(a)(2)(B). Dow has presented sufficient evidence to raise genuine factual issues under either of

these two theories as to SJWGE's continuing liability after the firm's dissolution for Jones's alleged

malpractice.

**D.**

Finally, SJWGE argues that Dow's lawsuit is a thinly-disguised attempt to circumvent the statutory shield under the RLLPAA and hold the individual partners of SJWGE liable for another partner's misconduct.  SJWGE asserts, and Dow apparently does not dispute, that the firm has no assets that can be attached or levied to satisfy any judgment against the firm.  (Def.'s Mem. at 2.) SJWGE argues that the only purpose that could be served by winning a judgment against the firm would be to provide grounds for piercing the veil of the former LLP and pursuing the assets of the individual partners.  However, the parties' filings suggest an alternative and legitimate purpose that may be served by winning a judgment against SJWGE.  Under the RLLPAA, the firm was required to maintain a liability insurance policy of at least $100,000 to cover "the kind of errors, omissions, negligence, incompetence, or malfeasance" for which the liability of the individual partners is limited. D.C. Code Ann. § 41-145 (1981).  Although SJWGE states that its insurance policy did not cover matters handled by Jones outside of the scope of the LLP, which SJWGE asserts would include Dow's case, this argument assumes the answer to the issues in dispute.  (Def.'s Reply at 4-5.)  Dow is entitled to pursue a judgment against SJWGE and then to pursue any available relief under the firm's insurance policy.

**III.**

Finally, SJWGE argues that all claims against the firm should be dismissed, because Dow's proposed expert has not provided an opinion on SJWGE's liability for Jones's malpractice.  Dow has retained Jose Felipe Anderson as a proposed expert witness.  Anderson has concluded that Jones and Harvey's conduct at Dow's criminal trial amounted to a "neglect of reasonable duty."  (Def.'s Mem. at

Ex. C, Anderson Rep. at 5.)  As required under Fed. R. Civ. P. 26(a), Dow has provided the

defendants with a written report from Anderson that recites his opinions and the bases and reasons for

these opinions, including the specific materials that Anderson reviewed in reaching his opinions.  (Id. at

Exs. C, D.)  Although Anderson's report states in one passage that "trial counsel and his law firm" were

ineffective in representing Dow, it does not contain any opinions regarding the legal basis for imposing

liability on SJGWE, but instead focuses exclusively on Jones and Harvey's conduct at Dow's trial.

(Id. at Ex. C.)

SJWGE may be suggesting that Anderson's report is incomplete and does not comply with

Rule 26(a), because of the absence of any statements regarding SJWGE's liability.  As Anderson's

report makes clear, however, this is because the liability of SJWGE is beyond the scope of his

proposed testimony.  The comment in Anderson's report that "trial counsel and his law firm" were

ineffective in their representation appears to assume that SJWGE would be liable for any malpractice

by Jones, rather than expressing an expert opinion from Anderson regarding the firm's liability.

On the other hand, SJWGE may be suggesting that Dow's claims should be dismissed because

of the absence of any expert testimony regarding the basis for imposing liability on the firm.  The liability

of SJWGE for Jones's alleged malpractice appears to be premised on the legal arguments discussed

above.  If SJWGE is suggesting that Dow should have presented expert testimony regarding pure

questions of law, this argument is incorrect because such expert testimony generally would be

inadmissible.  See United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002) (noting that expert

testimony on an ultimate issue that merely states a legal conclusion generally is inadmissible, because it

will not aid the jury).  In any event, expert testimony is not required in this case in order for Dow to

establish genuine issues as to material facts governing SJGWE's liability.

## IV.

Dow has presented specific evidence that raises genuine issues as to material facts governing SJGWE's liability for any legal malpractice committed by James Benny Jones. Dow has raised genuine factual disputes as to whether SJGWE formed an attorney-client relationship with Dow, under a theory of apparent authority or partnership by estoppel. Dow also has raised genuine factual disputes as to whether SJGWE remained liable for any malpractice that occurred after the LLP's dissolution, based on the rules governing winding up of partnership affairs and providing notice of dissolution. For the reasons stated above, the defendant SJGWE's motion for summary judgment will be denied.

A separate order follows.


    March 31, 2004                                 /s/                           
Date                                              Catherine C. Blake
United States District Judge